1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

8
9
10 | EFRAIN GARCIA, et al.

11                       Plaintiffs,

12        v.

13 ALLSTATE INSURANCE,

14                      Defendant.

Case No.   1:12-cv-00609-AWI-SKO

**FINDINGS AND RECOMMENDATIONS THAT DEFENDANT'S ANTI-SLAPP MOTION AND REQUEST FOR ATTORNEY'S FEES BE DENIED**

(Docket No. 39)

**OBJECTIONS DUE: 21 days**

15
16
17 _____/
18
19

## I.   INTRODUCTION

20       On June 5, 2013, Defendant Allstate Insurance ("Allstate" or "Defendant") filed a special

21 motion to strike Plaintiffs Efrain Garcia and Ofelia Garcia's (collectively, the "Garcias" or

22 "Plaintiffs") first amended complaint ("FAC") pursuant to California's anti-Strategic Lawsuits

23 Against Public Participation ("anti-SLAPP") statute, California Code of Civil Procedure Section

24 425.16, and a motion for attorney's fees.  (Doc. 39.)  On June 17, 2013, Plaintiffs, proceeding *pro*

25 *se*, filed an opposition to Allstate's motion, and on July 10, 2013, Allstate filed a reply.  (Docs. 40,

26 41.)  The Court reviewed the motion and supporting documents and determined that this matter

27 was suitable for decision without oral argument pursuant to the Rule 230(g) of Local Rules of the

28

1 United States District Court, Eastern District of California; as such, the hearing on the motion was

2 vacated.

3     For the reasons set forth below, the Court RECOMMENDS that Allstate's motion be

4 DENIED.

## II.    BACKGROUND

6 **A.    Factual Background**

7     Plaintiffs' FAC states one cause of action for malicious prosecution and alleges that this

8 action arises out of an automobile accident that occurred on January 4, 2003, and the subsequent

9 subrogation lawsuit wrongfully instituted by Allstate.  (Doc. 35.)  Plaintiffs allege that a vehicle

10 previously owned by Plaintiffs was involved in a hit and run collision against a vehicle insured by

11 Allstate, and that when the police officers spoke with Plaintiff Efrain Garcia, he reported that he

12 had sold the vehicle six months prior to the accident.  (Doc. 35, ¶ 7.)  Plaintiffs state that Allstate

13 contacted them in February 2003 and requested information about Plaintiffs' insurance coverage;

14 Plaintiffs informed Allstate that they were not the owners of the vehicle and that they had sold the

15 vehicle in June 2002.  (Doc. 35, ¶ 8.)  Plaintiffs allege that Allstate made no further contact with

16 Plaintiffs; however, Allstate filed a lawsuit against Plaintiffs for subrogation in the Tulare County

17 Superior Court, case no. PCL104534.   (Doc. 35, ¶ 8-11), The subrogation lawsuit sought

18 reimbursement of the damages Allstate had paid to its insured due to the automobile collision.

19 (Doc. 35, ¶ 9.)

20     Plaintiffs allege that, prior to filing the subrogation lawsuit, Allstate had knowledged that

21 Plaintiffs no longer owned the vehicle.  (Doc. 35, ¶¶ 10-11.)   Plaintiff Ofelia Garcia spoke with

22 Allstate's representative after receiving a request for information regarding insurance coverage.

23 (Doc. 35, ¶ 10.)  The police report indicated that Plaintiffs were not the owners of the automobile

24 in question.  (Doc. 35, ¶ 10.)  Further, the vehicle was sold on June 11, 2002, the title was "file-

25 stamped" on June 25, 2002, and was processed by the Department of Motor Vehicle ("DMV") on

26 July 19, 2002, supporting Plaintiffs' claim that they were not the owners of the vehicle at the time

27 of the January 4, 2003, accident.  (Doc. 35, ¶ 10.)  Plaintiffs allege that "[a]fter Plaintiffs verbally

28 provided the sale information to Defendant, Allstate, Defendant still pursued subrogation against

1   Plaintiffs despite knowledge that Plaintiffs were not the owners of the vehicle at the time of the

2   accident. Allstate filed suit against Plaintiffs on October 19, 2004[,] in Tulare County Superior

3   Court." (Doc. 35, ¶ 11.)

4       Plaintiffs allege that they were not served with the complaint and "were unaware of any

5   action being taken against them until they were personally served with an Order to Appear for

6   Examination dated July 23, 2007." (Doc. 35, ¶¶ 12-13.) Upon investigation, Plaintiffs learned of

7   the case against them in Tulare County Superior Court, learned that default judgment had been

8   entered, and were notified by the DMV that their licenses would be suspended as of October 1,

9   2007. (Doc. 35, ¶ 13.) Plaintiff Efrain Garcia's employer was served with an "Earnings

10  Withholding Order for Wage Garnishment" by Allstate on September 17, 2008. (Doc. 35, ¶ 13.)

11      Plaintiffs filed a motion to set aside and vacate the default and default judgment in the state

12  court subrogation suit on July 8, 2008. (Doc. 35, ¶ 15.) On October 14, 2008, the motion was

13  granted by the Tulare County Superior Court; however, the judge "only signed one order, on

14  behalf of Plaintiff Ofelia Garcia[,] and inadvertently failed to sign the second order on behalf of

15  Plaintiff Efrain Garcia." (Doc. 35, ¶ 16.)

16      On January 17, 2008, the DMV notified Plaintiff Ofelia Garcia that her driving privileges

17  had been reinstated. (Doc. 35, ¶ 17.) Plaintiffs allege that they "thought the matter settled and

18  assumed all previous judgments against them would be removed." (Doc. 35, ¶ 18.) In 2009,

19  Plaintiffs discovered that the Abstract of Judgment was still recorded against them. (Doc. 35,

20  ¶ 18.) Plaintiffs contacted Allstate's attorney of record, including sending "several . . . letters . . .,

21  all of which went unanswered." (Doc. 35, ¶ 18.) Plaintiffs discovered that the second order to set

22  aside default for Plaintiff Efrain Garcia had not been signed. (Doc. 35, ¶ 18.) Plaintiffs alleged

23  that, "[a]lthough the Court's intent was clear," Allstate's counsel "refused to remove the Abstract

24  of Judgment." (Doc. 35, ¶ 18.)

25      On February 28, 2011, Plaintiffs filed a declaration from Efrain Garcia with the Tulare

26  County Superior Court, requesting that the judge sign the order setting aside the default and

27  removing the Abstract of Judgment. (Doc. 35, ¶ 19.) The order was signed on April 5, 2011, and

28  default and default judgment against Efrain Garcia were set aside. (Doc. 35, ¶ 19.) Plaintiffs

allege that Allstate and its attorney "refused to dismiss the case," despite "years of providing supporting documentation." (Doc. 35, ¶ 20.) On November 3, 2011, Plaintiffs filed a Settlement Conference Statement with the Tulare County Superior Court for a settlement conference scheduled for November 15, 2011. (Doc. 35, ¶ 20.) On November 11, 2011, Allstate dismissed the state court action. (Doc. 35, ¶ 20.)

Plaintiffs' FAC alleges one cause of action for malicious conduct in pursuing a subrogation claim. (Doc. 35, ¶¶ 21-28.)

**B.     Procedural Background**

On March 14, 2012, Plaintiffs, represented by counsel, filed a lawsuit in Tulare County Superior Court against Allstate alleging a single cause of action for malicious prosecution. On April 17, 2012, Allstate removed the action to this Court, in the case entitled *Garcia, et al. v. Allstate Insurance*, case no. 1:12-cv-00609-AWI-SKO ("*Garcia I*"). (Doc. 1.)

On June 21, 2012, Allstate filed an anti-SLAPP motion. (Doc. 13.) Plaintiffs, represented by counsel, did not file an opposition.

On August 17, 2012, Plaintiffs, representing themselves *pro se*, filed another action in Tulare County Superior Court against Allstate, which was eventually removed by Allstate to this Court in the case entitled *Garcia, et al. v. Allstate Insurance*, case no. 1:12-cv-01762-AWI-SKO ("*Garcia II*"). (*Garcia II*, Doc. 1, pp. 5-14.) The parties were identical to those in *Garcia I*.

On September 18, 2012, Magistrate Judge Oberto issued Findings and Recommendations ("F&R") in *Garcia I* that Allstate's anti-SLAPP motion be granted without prejudice to Plaintiffs' ability to amend the complaint. (Doc. 16.) No objections to the F&R were filed, and on October 17, 2012, District Judge Ishii issued an order adopting the F&R and allowing Plaintiffs 21 days to file an amended complaint. (Doc. 18.)

On October 29, 2012, Allstate removed *Garcia II*, Plaintiffs' *pro se* action, to this Court, asserting that it was related to *Garcia I*. (*Garcia II*, Doc. 1, 2:10-20.) On November 5, 2012, Allstate filed a Motion to Dismiss in *Garcia II* contending that *Garcia II* was duplicative of *Garcia I*. (*Garcia II*, Doc. 10.)

4

On November 21, 2012, the Court closed *Garcia I* and entered judgment in favor of Allstate due to Plaintiffs' failure to file an amended complaint. (Docs. 20, 21.) Plaintiffs were still represented by counsel at the time *Garcia I* was closed, as their attorney had neither filed a request for substitution of counsel nor sought to withdraw from representation. (*See generally Garcia I* docket.)

On December 3, 2012, Allstate filed a Motion for Attorney's Fees in *Garcia I*. (Doc. 22.) On December 6, 2012, Plaintiffs filed their opposition to Allstate's Motion to Dismiss in *Garcia II*, and on December 10, 2012, Allstate filed its reply. (*Garcia II*, Docs. 12, 13.)

On December 13, 2012, District Judge Ishii issued an order in *Garcia II* (Doc. 16 (also docketed in *Garcia I* as Doc. 25)), finding that the complaints in *Garcia I* and *Garcia II* were impermissibly duplicative with identical parties. (*Garcia II*, Doc. 16, 3:27-28.) The order noted that *Garcia I* alleged a malicious prosecution claim and, while the precise cause of action in *Garcia II* was not clear, "[n]evertheless, the two cases appear to infringe on the same rights of Plaintiffs[;] it appears that substantially the same evidence would be used in . . . both cases, it appears that the rights established in one case would impair or destroy the rights in the other, and the two cases share the same nucleus of facts." (*Garcia II*, Doc. 16, 4:3-6.) Accordingly, the Court dismissed *Garcia II*, noting that "[g]iven the considerable work that has already occurred in *Garcia I*, and the fact there is a pending motion in that case, the Court sees no utility in maintaining [*Garcia II*]." (*Garcia II*, Doc. 16, 4:11-13.)

The Court also ordered further proceedings in *Garcia I*, finding that "Plaintiffs' opposition [to the Motion to Dismiss in *Garcia II*] suggests that they were abandoned by their attorney in *Garcia I*. Plaintiffs' opposition indicates that they were never properly informed about the consequences of filing a substitution of attorney, that the substitution was never filed, or that *Garcia I* had been removed." (*Garcia II*, Doc. 16, 5:20-23.) Further, it appeared that Plaintiffs were not aware of Allstate's anti-SLAPP motion or the 21-day deadline to file an amended complaint. (*Garcia II*, Doc. 16, 5:23-24.) As such, District Judge Ishii found that further proceedings were warranted and that possible relief may be justified. (*Garcia II*, Doc. 16, 5:24-28.) The Court ordered that Plaintiffs' opposition to the Motion to Dismiss in *Garcia II* be

1  filed as a Motion for Relief in *Garcia I*, and referred the matter to Magistrate Judge Oberto to

2  issue findings and recommendations on whether relief from judgment was appropriate due to

3  attorney abandonment under Rules 59 and/or 60 of the Federal Rules of Civil Procedure.  (*Garcia*

4  *II*, Doc. 16, 6:10-13.)

5        On December 14, 2012, District Judge Ishii denied without prejudice Allstate's Motion for

6  Attorney's Fees in *Garcia I* pending the resolution of Plaintiffs' Motion for Relief.  (Doc. 26.)

7        On April 22, 2013, Magistrate Judge Oberto issued an F&R in *Garcia I* that Plaintiffs'

8  motion for relief be granted, the order closing *Garcia I* be set aside, and the case be reopened.

9  (Doc. 28.)  On May 8, 2013, Plaintiffs lodged the FAC, which was held in abeyance by the Court

10  pending the objection period for the F&R and the District Judge's final determination.  (Docs. 29,

11  30.)  No objections to the F&R were filed, and on May 21, 2013, District Judge Ishii issued an

12  order adopting the F&R.  (Doc. 32.)  The case was reopened, and Plaintiffs' lodged FAC was

13  deemed filed on that date.  (Docs. 32, 35.)

14        On June 5, 2013, Allstate filed the instant anti-SLAPP and motion for attorney's fees.

15  (Doc. 39.)

16                              **III.   DISCUSSION**

17  **A.   Legal Standard**

18        The California legislature enacted California Code of Civil Procedure section 425.16(a) as

19  a remedy for the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the

20  constitutional rights of freedom of speech and petition for the redress of grievances."  Cal. Code

21  Civ. Proc. § 425.16(a); *see also Equilon Enters., LLC v. Consumer Cause, Inc*., 29 Cal. 4th 53,

22  59-60 (2002).  Such lawsuits are known as "SLAPP" suits, an acronym for "strategic lawsuit

23  against public participation."  *Equilon Enters*, 29 Cal. 4th at 57, n.1.  SLAPP suits are "civil

24  lawsuits. . . aimed at preventing citizens from exercising their political rights or punishing those

25  who have done so."  *Rezec v. Sony Pictures Entm't, Inc.*, 116 Cal. App. 4th 135, 139 (2004)

26  (citations omitted).  Section 425.16(a) provides that the statute shall be broadly construed.  *Rohde*

27  *v. Wolf*, 154 Cal. App. 4th 28, 35 (2007).

28

A defendant opposing a SLAPP claim may bring a special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue." Cal. Civ. Proc § 425.16(b)(1).   The so-called "anti-SLAPP" statute provides a means of quickly identifying and eliminating SLAPP actions through early dismissal.   Because SLAPP suits seek to deplete "the defendant's energy" and drain "his or her resources," the legislature sought "to prevent SLAPPs by ending them early and without great cost to the SLAPP target." *Kibler v. N. Inyo Cnty. Local Hosp. Dist.*, 39 Cal. 4th 192, 197 (2006) (citations omitted).   "Thus, in promulgating section 425.16, the California legislature provided that a 'special motion to strike may be brought early in the lawsuit and that discovery ordinarily may not proceed unless and until the court finds that the [plaintiff's] suit has a probability of success.'" *Aeroplate Corp. v. Arch Ins. Co.*, No. CV F 06-1099 AWI SMS, 2006 WL 3257487, at *3 (E.D. Cal. Nov. 9, 2006) (citing *Rogers v. Home Shopping Network, Inc*. 57 F. Supp. 2d 973, 976 (C.D. Cal.1999)).

The Ninth Circuit has determined that Section 425.16 applies in federal courts in the absence of "direct collusion" between the state enactment and the Federal Rules of Civil Procedure 8, 12, and 56.   *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999); *see also Makaeff v. Trump Univ., LLC*, 11-55016, 2013 WL 6183821 (9th Cir. Nov. 27, 2013) (denying petition for rehearing of *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 275 (9th Cir. 2013)) (Wardlaw, J., and Callahan, J., concurring) (finding that anti-SLAPP provisions apply in federal court); *Hopscotch Adoptions, Inc. v. Kachadurian*, No. CV F 09-2101 LJO MJS, 2011 WL 587357, at *3 (E.D. Cal. Feb. 9, 2011); *Aeroplate Corp*, 2006 WL 3257487, at *4.   California's "[a]nti-SLAPP statute and the Federal Rules do, in some respects, serve similar purposes, namely the expeditious weeding out of meritless claims before trial . . . . [T]here is no indication that Rules 8, 12, and 56 were intended to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless claims."   *Newsham*, 190 F. 3d at 972.   The Ninth Circuit found that:

///

1
2
3
4

Although Rules 12 and 56 allow a litigant to test the opponent's claims before trial, California's "special motion to strike" adds an additional, unique weapon to the pretrial arsenal, a weapon whose sting is enhanced by an entitlement to fees and costs. Plainly, if the anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum. Conversely, a litigant otherwise entitled to the protections of the Anti-SLAPP statute would find considerable disadvantage in a federal proceeding.

5   *Id.* at 973.

6   "Special procedural rules apply where an anti-SLAPP motion is brought in federal court."

7   *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal.

8   2006); *see also Hopscotch Adoptions, Inc.*, 2011 WL 587357, at *3.  As such, "the federal court

9   special motion is a far different (and tamer) animal than its state-court cousin."  *Makaeff,* 715 F.3d

10  254, 275 (9th Cir. 2013) (Kozinski, C.J., concurring).  Federal courts must apply federal standards

11  when considering Section 425.16 motions.  *Rogers*, 57 F. Supp. 2d at 982.  "If a defendant makes

12  a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion

13  must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee

14  provision of § 425.16(c) applies."  *Id*. at 983.   However, "[i]f a defendant makes a special motion

15  to strike based on the plaintiff's alleged failure of proof, the motion must be treated in the same

16  manner as a motion under Rule 56 except that again the attorney's fees provision of § 425.16(c)

17  applies."  *Id*.

18  While a Section 425.16 special motion to strike does not apply to federal claims in federal

19  court, *see, e.g.*, *Bulletin Displays, LLC*, 448 F. Supp. 2d at 1182; *Hopscotch Adoptions, Inc.*, 2011

20  WL 587357, at *4, the anti-SLAPP statute does apply to "state law claims that federal courts hear

21  pursuant to their diversity jurisdiction."  *Hilton v. Hallmark Cards*, 599 F.3d 894, 900 (9th Cir.

22  2010).

23  A court considering a motion to strike under California's anti-SLAPP statute must engage

24  in a two-part inquiry.  First, a defendant must make an initial prima facie showing that the

25  plaintiff's suit arises from activity protected by the anti-SLAPP statute.  Cal. Code Civ. Pro.

26  § 425.16(b)(1); *Brill Media Co. v. TCW Group, Inc.*, 132 Cal. App. 4th 324, 329, (2005),

27  *disapproved on other grounds in Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal. 4th 12 (2010).  In

28  determining whether the defendant has made this showing, the California Supreme Court has

8

1  stressed that "the critical point is whether the plaintiff's cause of action itself was based on an act

2  in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman*,

3  29 Cal. 4th 69, 78 (2002).  Second, if the defendant is able to make this threshold showing, the

4  burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims.

5  Accordingly, a plaintiff must show that the claim is "both legally sufficient and supported by a

6  sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted

7  by the plaintiff is credited."  *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 744 (2003).

8  Claims for which a plaintiff is able to satisfy this burden are "not subject to being stricken as a

9  SLAPP."  *Id.*; *see also Roderick v. Weissman*, No. 1:11-CV-02093 LJO, 2012 WL 639463, at *2

10 (E.D. Cal. Feb. 24, 2012).

11 **B.      Analysis**

12        Allstate moves to strike Plaintiffs' single cause of action for malicious prosecution.  As

13 Plaintiffs' complaint alleges a state law claim, and this action was removed by Allstate to this

14 Court based on diversity, the Court properly considers Allstate's anti-SLAPP motion.[1]

15        **1.      Allstate Meets Its Burden to Show that Plaintiffs' Suit Arises From Protected
16                Activity**

17        Allstate bears the initial burden of making a prima facie showing that Plaintiffs' suit arises

18 from activity that is protected under California's anti-SLAPP statute.  Cal. Code Civ. Pro.

19 § 425.16(b)(1)*; Brill Media Co.*, 132 Cal. App. 4th at 329.  "[T]he critical consideration is whether

20 the cause of action is based on the defendant's protected free speech or petitioning activity."

21 *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002).  "[A] defendant that satisfies its initial burden of

22 demonstrating the targeted action is one arising from protected activity faces no additional

23 requirement of proving the plaintiff's subjective intent . . . Nor need a moving defendant

24 demonstrate that the action actually has had a chilling effect on the exercise of such rights."  *Id.* at

25 88 (citation omitted).  "A defendant meets this [protected activity] burden by demonstrating that

26

27

28 [1] Defendant's anti-SLAPP motion was timely filed, as it was filed within 60 days of the date that the Court deemed
Plaintiffs' FAC filed.  *See* Cal. Code Civ. Proc. § 425.16(f).

the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)." *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1043 (1997).

California Code of Civil Procedure 425.16 (e) provides:

As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes:

(1) *any written or oral statement or writing made before a legislative, executive, or judicial proceeding*, or any other official proceeding authorized by law;

(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;

(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest;

(4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

(emphasis added.)

Here, Plaintiffs' FAC alleges one claim for malicious prosecution based on Allstate having filed a prior lawsuit against Plaintiffs for subrogation of damages. (Doc. 35.) Allstate's filing of the underlying lawsuit is a protected activity under Section 425.16(e)(1). "The constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action." *Ludwig v. Super. Ct.*, 37 Cal. App. 4th 8, 19 (1995). "It is well established that filing a lawsuit is an exercise of a party's constitutional right of petition." *Chavez v. Mendoza*, 94 Cal. App. 4th 1083, 1087 (2001). The "filing of a judicial complaint satisfies the 'in connection with a public issue' component of section 425.16, subdivision (e)(1) because it pertains to an official proceeding." *Id*. at 1087.

Further, "by its terms, section 425.16 potentially may apply to every malicious prosecution action, because every such action arises from an underlying lawsuit, or petition to the judicial branch. By definition, a malicious prosecution suit alleges that the defendant committed a tort by filing a lawsuit." *Jarrow Formulas, Inc.*, 31 Cal. 4th at 734–35 (2003).

As such, Allstate has met its prima facie burden to show that Plaintiffs' suit arises under activity protected by California's anti-SLAPP statute.

**2.** **Plaintiffs Demonstrate a Probability of Prevailing on Their Claim for Malicious Prosecution**

As Allstate has met its initial burden, the burden now shifts to Plaintiffs to show the probability of prevailing on the challenged claims.  Cal. Code Civ. Pro. § 425.16(b)(1); *Jarrow Formulas, Inc.*, 31 Cal. 4th at 744.  "[T]he plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."  *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*, 136 Cal. App. 4th 464, 476 (2006) (citations and emphasis omitted).  As such, a plaintiff must "establish a probability he or she will prevail on the claim at trial, i.e., to proffer a prima facie showing of facts supporting a judgment in the plaintiff's favor."  *Chavez*, 94 Cal. App. 4th at 1087.

"At [the] second step of the anti-SLAPP inquiry, the required probability that [a party] will prevail need not be high." *Hilton,* 599 F.3d at 908. The "statute does not bar a plaintiff from litigating an action that arises out of the defendant's free speech or petitioning; it subjects to potential dismissal only those actions in which the plaintiff cannot state and substantiate a legally sufficient claim."  *Id.* at 908 (quoting *Navellier*, 29 Cal. 4th at 93); *see also Chevron Corp. v. Bonifaz*, No. 09-05371 CW, 2010 WL 1948681, at *3 (N.D. Cal. May 12, 2010).

To survive an anti-SLAPP motion against a malicious prosecution claim, Plaintiffs are required to show that their complaint is "supported by a sufficient prima facie showing of facts to sustain a favorable judgment" on the issues of probable cause and malice. *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1163 (9th Cir. 2011) (internal citations and quotations omitted).  The Court "considers the pleadings and evidentiary submissions of both the plaintiff and the defendant; though the court does not weigh the credibility or comparative probative strength of competing evidence." *Id*.

> Where, as here, the process of discovery is not begun or is incomplete, the rule . . . is . . . : (1) If the motion pursuant to section 425.16 challenges the legal sufficiency of the complaint, and does not require the consideration of facts that are produced through the discovery process, then the issue is decided under the standards applicable to a motion to dismiss pursuant to Rule 12(b)(6) . . . [and] (2) If the motion challenges the factual basis of the plaintiff's case, and relies on declarations and affidavits produced through the discovery process, then the application of Rule 56 may require the motion to strike pursuant to section 425.16 be denied as premature.

1   *Aeroplate Corp*, 2006 WL 3257487, at *5 (citing *Rogers*, 57 F. Supp. 2d at 982-83).

2        As the court in *Rogers* stated:

3        In sum, § 425.16 applies in federal court. However, it cannot be used in a manner
         that conflicts with the Federal Rules. This results in the following outcome: If a
4        defendant makes a special motion to strike based on alleged deficiencies in the
         plaintiff's complaint, the motion must be treated in the same manner as a motion
5        under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies.
         If a defendant makes a special motion to strike based on the plaintiff's alleged
6        failure of proof, the motion must be treated in the same manner as a motion under
         Rule 56 except that again the attorney's fees provision of § 425.16(c) applies.
7

8   *Rogers*, 57 F. Supp. 2d at 983; *see also Aeroplate Corp*, 2006 WL 3257487, at *5.

9        Here, it appears that Allstate is moving to specially strike the FAC under both the Rule 12

10  and Rule 56 standards.  (*See* Doc. 39, 11:21-22 ("Evaluated either under a Rule 12 or a Rule 56

11  standard, the plaintiffs cannot meet their burden of proof on this action.").)  Allstate contends that

12  Plaintiffs' "pleadings do not fulfill their burden" in establishing their probability of prevailing on

13  the malicious prosecution claim.  (Doc. 39, 14:3.)  Further, Allstate contends that the evidence

14  submitted in support of its anti-SLAPP motion, the Declaration of Nancy Daveldek, "establishes

15  that Allstate had no knowledge of the acts" undertaken in the filing of the underlying state court

16  lawsuit.  (Doc. 39, 14:3-5; pp. 17-20.)

17       As Allstate is moving under both a Rule 12 and Rule 56 standard, the Court will first

18  consider if Plaintiffs' FAC adequately pleads a malicious prosecution claim under the Rule 12

19  standard.  If Plaintiffs' claim is adequately pled, then the Court will consider whether Plaintiffs'

20  claim survives in light of the evidence submitted by Allstate.

21            **a.      Plaintiffs' FAC Claim for Malicious Prosecution is Sufficiently Pled**

22       The Court considers the legal sufficiency of Plaintiffs' complaint under a motion to dismiss

23  Rule 12(b)(6) standard.  In determining whether a complaint fails to state a claim, the Court uses

24  the same pleading standard used under Federal Rule of Civil Procedure 8(a).  Under Rule 8(a), a

25  complaint must contain a "short and plain statement of the claim showing that the pleader is

26  entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not

27  require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

28  unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

1   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   "[A] complaint must contain sufficient factual

2   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting

3   *Twombly*, 550 U.S. at 557).   "[A] complaint [that] pleads facts that are 'merely consistent with' a

4   defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement

5   to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).   Further, although a court must accept as true

6   all factual allegations contained in a complaint, a court need not accept a plaintiff's legal

7   conclusions as true.  *Id.*   "Threadbare recitals of the elements of a cause of action, supported by

8   mere conclusory statements, do not suffice."  *Id.* (quoting *Twombly*, 550 U.S. at 555).

9        Plaintiffs' FAC alleges one cause of action for malicious prosecution.  (Doc. 35.)   "To

10   establish a cause of action for the malicious prosecution of a civil proceeding, a plaintiff must

11   plead and prove that the prior action (1) was commenced by or at the direction of the defendant

12   and was pursued to a legal termination in [plaintiff's] favor; (2) was brought without probable

13   cause; and (3) was initiated with malice."  *Citi-Wide Preferred Couriers, Inc. v. Golden Eagle Ins.*

14   *Corp.*, 114 Cal. App. 4th 906, 911 (2003). These elements "have historically been carefully

15   circumscribed so that litigants with potentially valid claims will not be deterred from bringing

16   their claims to court by the prospect of a subsequent malicious prosecution claim." *Sheldon Appel*

17   *Co. v. Albert & Olliker*, 47 Cal. 3d 863, 872 (1989).

18

19         **i.**    **Plaintiffs Have Sufficiently Alleged that the Prior Action was Terminated in Plaintiffs' Favor**

20        Plaintiffs meet the first prong that the prior action terminated in Plaintiffs' favor.  Plaintiffs'

21   complaint alleges that on October 19, 2004, Allstate instituted the prior civil action against

22   Plaintiffs in the Tulare County Superior Court in *Allstate Insurance Company v. Efrain Garcia*

23   *and Ofelia Garcia*, case no. PCL1045534.  (Doc. 35, ¶ 11.)  Plaintiffs further allege that Allstate

24   voluntarily dismissed that action on November 11, 2011, after numerous court proceedings and

25   after Plaintiffs' filing of a Settlement Conference Statement.  (Doc. 35, ¶ 20.)  Plaintiffs thus sets

26   forth that the underlying state court action was commenced by Allstate and was terminated in

27   Plaintiffs' favor.  As such, Plaintiffs' allegations sufficiently meet the first prong of establishing a

28   claim for malicious prosecution.  *See Chevron*, 2010 WL 1948681, at *4 (noting that "[t]o be

considered favorable for the purposes of a malicious prosecution suit, the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit" and finding that "[i]n most cases, a voluntary unilateral dismissal is considered a termination in favor of the defendant in the underlying action") (citations omitted). Further, Allstate's anti-SLAPP motion does not challenge this prong of the malicious prosecution claim. *See* Doc. 39.

### ii.   Plaintiffs Have Sufficiently Alleged that Allstate Lacked Probable Cause to Bring the Prior Action

Plaintiffs must also demonstrate that Allstate lacked probable cause to initiate the lawsuit. "The probable cause inquiry is objective, asking whether a reasonable person would have thought that the claim was legally tenable without regard to her mental state . . . . This is a lenient standard; only those actions that any reasonable attorney would agree are totally and completely without merit may form the basis for a malicious prosecution suit." *Chevron Corp.*, 2010 WL 1948681, at *6 (citations and quotation marks omitted).

Probable cause "is a question of law that turns on whether the underlying claim was legally tenable, as determined on an objective basis." *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1031 (9th Cir. 2008) (quoting *Padres L.P. v. Henderson,* 114 Cal. App. 4th 495, 517) (quotation marks omitted).  Probable cause "is measured by the state of the defendant's *knowledge,* not by his *intent.* . . . [T]he standard applied to defendant's consciousness is external to it.  The question is not whether *he* thought the facts to constitute probable cause, but whether *the court* thinks they did." *Id.* (citing *Sheldon Appel Co.*, 47 Cal. 3d at 881) (quotation marks omitted).

As noted above, when deciding an anti-SLAPP motion under a Rule 12(b)(6) standard, the Court considers the sufficiency of pleadings.  Plaintiffs' FAC alleges that the initial action arose from an automobile accident that occurred on January 4, 2003, involving a vehicle previously owned by Plaintiffs but sold by them six (6) months prior to the accident.  (Doc. 35, ¶ 7.) Plaintiffs allege that Plaintiff Efrain Garcia informed the police that the vehicle had been sold and then re-sold again, and that they did not know the new owner of the vehicle.  (Doc. 35, ¶ 7.)  The FAC contains the police report concerning the automobile accident, which states that the police

had contacted the registered owner of the subject vehicle, Efrain Garcia, at his residence and "Mr. Garcia stated that he sold V-1 [Vehicle 1] approximately 6 months ago to a man named Jose Luis and Jose Luis had sold V-1 to another person in the last few days.  Mr. Garcia did not know the name of the second buyer or the last name of Jose Luis.  No further follow up was possible." (Doc. 35, Exh. A, p. 19.)

Further, Plaintiffs allege that after receiving "correspondence from Allstate dated February 28, 2003[,] requesting insurance company information[,] Plaintiffs informed Allstate Insurance they were not the owners, [and that] the vehicle had been sold in June 2002."  (Doc. 35, ¶ 8, *see also* ¶¶ 10, 21 and Exh. B.)  Plaintiffs allege that "[a]fter Plaintiffs verbally provided the sale information to Defendant, Allstate, Defendant still pursued subrogation against Plaintiffs despite knowledge that Plaintiffs were not the owners of the subject vehicle at the time of the accident." (Doc. 35, ¶ 11.)  Additionally, Plaintiffs' FAC contains a Registration Information Request from the DMV showing that Plaintiffs had been the owners of the subject vehicle, but there had been a "release of liability" based on a "receipt date" of "7/19/02" with a "transfer date" of "6/11/02" to "buyer: Adame JoseL."  (Doc. 35, Exh. D, p. 27.)  Plaintiffs allege that information obtainable from the DMV "clearly support[ed] Plaintiffs' claim of their non-ownership of the subject vehicle."  (Doc. 35, ¶ 10.)

Plaintiffs' FAC contains the underlying state court complaint brought in the Tulare County Superior Court, case no. PCL104531, which was filed on October 19, 2004.  (Doc. 35, Exh. E, pp. 29-34.)  Allstate Insurance Company was the named Plaintiff in the underlying suit, which was brought against Efrain Garcia and Ofelia Garcia.  (Doc. 35, Exh. E, p. 30.)  Attorney Gary A. Rosenberg indicated that he was "Attorney[] for Plaintiff."  (Doc. 35, Exh. E, p. 30, 34.)  The suit was a "complaint in subrogation for damages" and alleged that on January 4, 2003, Allstate's insured was involved in a motor vehicle accident with a vehicle that was "negligently owned, drove, entrusted, managed, operated, maintained and controlled" by the Garcias, causing injuries and damage to the insured.  (Doc. 35, Exh. E, p. 30 and p. 32, ¶¶ 9-10.)  Further, Allstate's subrogation claim alleged that, "[p]rior to the filing of the instant lawsuit, [Allstate] notified [the Garcias], and each of them, of the payment [that Allstate made to its insured] and of [Allstate's]

right to subrogation and demanded payment from [the Garcias], and each of them, in the sum of $10,233.20, but [the Garcias], and each of them, have failed and refused, and continue to fail and refuse, to pay [Allstate] the whole or any part thereof."  (Doc. 35, Exh. E, p. 33, ¶ 17.)

Plaintiffs' FAC also contains the "Declaration in Lieu of Testimony" from Lorey K. Allen, "litigation claims representative of Allstate Insurance Company" submitted by Allstate in the prior action.  (Doc. 35, Exh. Q, pp. 118-22.)  The declaration was dated December 20, 2004, and signed under penalty of perjury.  (Doc. 35, Exh. Q, p. 122.)  Ms. Allen declared that she was "one of the custodians of the books, records and files of Plaintiff [Allstate] as those books, records and files pertain to Defendants [the Garcias] herein."  (Doc. 35, Exh. Q. p. 118, ¶ 2.)  Ms. Allen declared that she had "personally worked" on the books, records, and files pertaining to the Garcias, and that, "[i]f called upon to testify in this action, as to the matters set forth in this Declaration, could and would competently testify thereto, since the facts herein set forth are personally known to [Ms. Allen] to be true."  (Doc. 35, Exh. Q, p. 118-19, ¶ 2.)  Ms. Allen declared that she "personally reviewed the Complaint filed" in the underlying state court action and "verif[ied] the same and hereby adopt said verified Complaint."  (Doc. 35, Exh. Q, p. 119, ¶ 3.)  Additionally, Ms. Allen's declaration purports to attach "true and correct copies of documents in support of the negligence of [the Garcias] . . ., (including, but not limited to, police reports if applicable) . . . ."  (Doc. 35, Exh. Q, p. 121, ¶ 14.)

As such, Allstate's underlying claim for subrogation was based on the allegation that the Garcias drove, owned, and controlled the vehicle that was involved in the January 4, 2003, accident against Allstate's insured.  Allstate further alleged that it had contacted the Garcias prior to initiating the lawsuit. Additionally, a representative from Allstate declared under penalty of perjury that she was the litigation claims representative for Allstate and one of the custodian of records for the files pertaining to the Garcias, and that she had adopted and verified the allegations in Allstate's complaint and set forth that a police report had been reviewed, "if applicable." (Doc. 35, Exh. Q.)

However, the Garcias' allegations in the FAC set forth that the Garcias informed the police that they no longer owned the subject vehicle on the date of the accident, the police report

reflected this information, and the Garcias further contacted Allstate to inform the insurance company directly that they were not the owners of the vehicle and that it had been sold in June 2002, six (6) months prior to the accident.  (Doc. 35, ¶¶ 7-10.)

In determining whether Allstate lacked probable cause to bring the initial lawsuit against the Garcias for subrogation, the Court must determine if a reasonable person would have thought that Allstate's claim was legally tenable.  *See Tucker*, 515 F.3d at 1031.  Allstate's underlying complaint for subrogation was based on the allegation that the Garcias "were the owners, drivers, employers of the drivers, principals of the drivers, maintained and/or controlled" the vehicle that was involved in the automobile accident with Allstate's insured.  (Doc. 35, Exh. E, p. 32, ¶ 8.) However, the Garcias' FAC contains allegations and supporting documentation, including a copy of the police report and a Registration Information Request from the DMV that shows that the Garcias were not the owners of the vehicles at the time of the accident, had sold the vehicle six (6) months prior to the date of the accident, and alleges that the Garcias had informed Allstate of this information.   (Doc. 35, ¶¶ 7-10, Exhs. A, D.)   Further, the declaration by Allstate's representative, Ms. Allen, in the underlying lawsuit implies that Allstate had access to the police report, which states that the Garcias had informed the police that they no longer owned the vehicle.  (*See* Doc. 35, Exh. Q, p. 121, ¶ 14; *see also* Exh. A, p. 19.)

"In the context of an Anti-SLAPP motion, Plaintiff[s] merely must demonstrate a probability of prevailing."  *Roderick*, 2012 WL 639463, at *12 (citation and quotation marks omitted).  Here, Allstate's subrogation claim is based upon the Garcias owning, driving, or controlling the subject vehicle, and the Garcias' FAC sets forth that Allstate knew or should have known prior to initiating the underlying lawsuit that the Garcias did not drive, control, or own the vehicle because they had sold the vehicle prior to the accident.  As such, the Garcias have sufficiently alleged that Allstate lacked probable cause to initiate the underlying case, since there would not be a legally tenable reason for Allstate to bring a subrogation lawsuit against the Garcias if they did not drive, own, or control the automobile at the time of the accident. The Garcias have thus shown the probability of prevailing on the element of probable cause in their malicious prosecution claim.

### iii.      Plaintiffs Have Sufficiently Alleged that Allstate Acted with Malice in the Prior Action

"The malice element of the malicious prosecution tort relates to the subjective intent or purpose with which the defendant acted in initiating the prior action." *Sheldon Appel Co.*, 47 Cal. 3d at 874.   In some jurisdictions, malice can be inferred from, among other things, a lack of probable cause. *See Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 515 n. 39 (1998). However, in California, because the presence or absence of probable cause is an entirely objective inquiry, "[b]y itself, the conclusion that probable cause is absent logically tells the trier of fact nothing about the defendant's subjective state of mind." *Id*. at 498.   As such, "the presence of malice must be established by other, additional evidence." *Id*.   The additional evidence "must include proof of either actual hostility or ill will on the part of the defendant or a subjective intent to deliberately misuse the legal system for personal gain or satisfaction at the expense of the wrongfully sued defendant." *Id*. at 498–99.

"Additional proof of malice can consist of evidence a party *knowingly* brings an action without probable cause . . . .   [A] corollary to this rule can be stated as follows: malice can be inferred when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause." *Daniels v. Robbins*, 182 Cal. App. 4th 204, 226 (2010).   The actual ill will or improper purpose required for "malice" in a malicious prosecution action can range from "open hostility to indifference." *See Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 296 (2006). Malice can be inferred when "defendants in the malicious prosecution action continued their prosecution of the underlying . . . action after learning it was baseless." *Id*. at 297 (citing *Zamos v. Stroud*, 32 Cal. 4th 958, 968-69 (2004)).

Here, Plaintiffs have sufficiently alleged that Allstate lacked probable cause in bringing the underlying suit.   The Garcias' FAC alleges that Allstate had knowledge that it lacked probable cause to bring the prior subrogation suit because Allstate had access to the police report, the Garcias had informed the police that they no longer owned the subject vehicle at the time of the accident, and the Garcias personally informed Allstate that they were not the owners of the

vehicle.  (Doc. 35, ¶¶ 7-10, 21-22.)  As such, the Garcias' allegations set forth that Allstate brought the prior action knowing that it lacked probable cause to sue for subrogation.

Further, the Garcias' FAC sets forth allegations that the prior lawsuit continued to be prosecuted despite Allstate's knowledge that it lacked probable cause.  The Garcias allege that, on July 8, 2008, upon learning of Allstate's suit after default judgment was entered against them, they filed a motion to set aside and vacate the default judgment, and "provided all documentation regarding the sale of the subject vehicle, the Department of Motor Vehicle print-out proving the sale, (equally available to defendant[] all along) and Plaintiff[] Efrain Garcia's pay stub for the date that Defendant[], Allstate[,] allegedly served Mr. and Mrs. Garcia with the subject lawsuit showing that Mr. Garcia could not have been served that day as [Allstate] alleged."  (Doc. 35, ¶ 15, Exh. K.)  Plaintiffs also filed a general denial that asserted that the vehicle had been sold and that this information had been provided to the police.  (Doc. 35, ¶ 15, Exh. L.)

On October 14, 2008, the judge in the prior state court action approved the motion and signed the order setting aside default and vacating default against Ofelia Garcia, but allegedly inadvertently failed to sign the second order on behalf of Efrain Garcia.  (Doc. 35, ¶ 16, Exh. M.) In 2009, Plaintiffs alleged that they discovered that the Abstract of Judgment was still recorded against them, and they contacted Allstate's attorney of record requesting that the recording be canceled and the abstract of judgment removed.  (Doc. 35, ¶ 18.)  Allstate's attorney allegedly failed to respond to the Garcias' requests.  (Doc. 35, ¶ 16.)  The Garcias also wrote several letters to Allstate's attorney, "all of which went unanswered."  (Doc. 35, ¶ 18.)  Upon learning that the second order setting aside default and vacating the judgment against Efrain Garcia had not been signed, on February 28, 2011, the Garcias filed a declaration from Efrain Garcia in support of the motion to set aside default and remove/release the abstract of judgment, attaching all correspondence the Garcias had provided to Allstate's counsel as well as additional supporting documentation.  (Doc. 35, ¶ 19, Exh. O.)  The state court ordered that default judgment be set aside and the abstract of judgment be released/removed against Efrain Garcia on April 5, 2011. (Doc. 35, ¶ 19, Exh. P.)

Plaintiffs further allege that Allstate "still refused to dismiss the case" against the Garcias, even though they had provided substantial supporting documentation that they were not the owners of the vehicle at the time of the accident.  (Doc. 35, ¶ 20.)  The Garcias allege that on November 3, 2011, they filed a Settlement Conference Statement in preparation for a settlement conference scheduled for November 15, 2011, which again stated their position.  (Doc. 35, ¶ 20.)  On November 11, 2011, Allstate "finally dismissed the case."  (Doc. 35, ¶ 20.)

As noted above, Plaintiffs merely must demonstrate a probability of prevailing on their claims in the context of an anti-SLAPP motion.  *Roderick*, 2012 WL 639463, at *12.   Here, Plaintiffs' FAC sufficiently alleges that Allstate acted with malice since it initiated the prior lawsuit knowing that it lacked probable cause and continued to prosecute the lawsuit upon further showing that it lacked probable cause.  Plaintiffs allege that Allstate knowingly lacked probable cause at the initiation of the prior lawsuit, since the Garcias had personally informed Allstate that they were not the owners of the subject vehicle at the time of the accident, the police report further indicated as such, and evidence submitted by Allstate indicates that it reviewed the police report. (Doc. 35, ¶¶ 7-10; Exh. Q.)  Additionally, Plaintiffs' allegations set forth that Allstate continued to prosecute the action despite further showing that it lacked probable cause based on the Garcias providing supporting documentation that they were not the owners of the vehicle in their motions to set aside default and vacate default judgment, Allstate's counsel's refusal to cancel and remove the abstract of judgment in light of this showing, and Allstate's refusal to dismiss the case even after the default and default judgment were set aside until such time as Allstate was required to appear at a settlement conference.  (Doc. 35, ¶¶ 15-20.)  As such, since the Garcias' allegations show that Allstate both knew that it lacked probable cause at the initiation of the subrogation suit, and continued to prosecute the suit even after the Garcias provided documentation that Allstate lacked probable cause to continue, the Garcias have thus shown the probability of prevailing on the element of malice in their malicious prosecution claim.

As set forth above, the Garcias have sufficiently pled all three elements of a malicious prosecution case: that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in plaintiffs' favor; (2) was brought without probable cause;

20

1   and (3) was initiated or continued with malice. *Citi-Wide Preferred Couriers, Inc.*, 114 Cal. App.

2   4th at 911.   Accordingly, after reviewing the sufficiency of Plaintiffs' pleadings under a Rule

3   12(b)(6) standard, Allstate's motion should be denied.

4

5           **b.     Allstate's Submitted Evidence Does Not Overcome Plaintiffs' Malicious
                     Prosecution Claim**

6           Since Plaintiffs' claim is sufficiently pled, the Court now considers whether Plaintiffs'

7   claim survives in light of the evidence submitted by Allstate in support of the anti-SLAPP motion.

8   The Court notes that if Allstate's motion is granted based on the submitted evidence, because the

9   "discovery-limiting provisions of section 425.16, subdivisions (f) and (g), collide with the

10  discovery-permitting provisions of Rule 56," the motion would likely need to be denied as

11  premature and Plaintiffs would need to be permitted to conduct discovery as to the contentions

12  raised by Allstate's evidence. *Aeroplate Corp.*, 2006 WL 3257487, at *9.   Here, however, as

13  Allstate's submitted evidence is contradicted by its own contentions in the prior lawsuit, the Court

14  finds that Allstate's submitted evidence does not overcome Plaintiffs' claim for malicious

15  prosecution.

16          Allstate contends that it contracted with an outside company, CCS Companies ("CCS") to

17  pursue subrogation actions arising from Allstate's insurance claims and that CCS, not Allstate,

18  decided to bring the underlying action.  (Doc. 39, 7:4-20.)  Allstate asserts that is not vicariously

19  liable for actions by CCS and its attorney in bringing the underlying lawsuit, and Plaintiffs are

20  thus unable to show probable cause or malicious intent by Allstate.  (Doc. 39, 7:4-9:12.)

21          As a general rule, Plaintiffs cannot maintain a claim for "malicious prosecution where

22  defendants show 'that they have in good faith consulted a lawyer, have stated all the facts to him,

23  have been advised by the lawyer that they have a good cause of action and have honestly acted

24  upon the advice of the lawyer.'" *Fisher Tool Co., Inc. v. Gillet Outillage*, 530 F.3d 1063, 1066

25  (9th Cir. 2008) (citing *DeRosa v. Transamerica Title Ins. Co.*, 213 Cal. App. 3d 1390, 1397

26  (1989)); *see also Kennedy v. Byrum*, 201 Cal. App. 2d 474, 481 (1962) ("Reliance in good faith on

27  the advice of counsel is a defense to an action for malicious prosecution, inasmuch as such defense

28  shows probable cause.") (citations omitted).   Here, however, as set forth above, Plaintiffs'

allegations assert that Allstate lacked probable cause, and Allstate's motion has not shown that it relied upon the advice of counsel before bringing the prior lawsuit.

Instead, Allstate contends that it relied entirely upon an outside agent and that agent's counsel, and that Allstate was not part of the decision-making process regarding the filing of the underlying lawsuit.  (Doc. 13, 7:4-9:12.)  Allstate submits the Declaration of Nancy Daveldek, a senior service adjuster who has been employed with Allstate for approximately ten years.  (Doc. 39, Daveldek Decl., p. 18, ¶ 1.)  Ms. Daveldek declares Allstate contracted with CCS "to, among other things, pursue subrogation actions arising from insurance claims."  (Doc. 39, Daveldek Decl., p. 18, ¶ 2.)  Ms. Daveldek states that, in the scope of her employment, she had "access to the Allstate-CCS contract," which stated that "CCS provided all staffing on [subrogation] claims from Allstate," and that "CCS was responsible for pursuing subrogation on these claims, including referring claims to attorneys when appropriate."  (Doc. 39, Daveldek Decl., p. 18, ¶ 3.)  While "CCS was to notify Allstate" before filing a suit, "CCS was not obligated to report to Allstate about the progress of the subrogation lawsuits that [CCS] pursued."    (Doc. 39, Daveldek Decl., p. 18, ¶ 3.)

Ms. Daveldek indicates that she reviewed the file regarding the underlying lawsuit against the current Plaintiffs and notes that:

> There are entries that state that this file was sent to CCS for subrogation, a few entries concerning checks written to CCS to reimburse for court costs incurred, and a few entries in 2005 concerning obtaining and transmitting to CCS a declaration by the insured relating to a default judgment.  There was no other communications noted in the diary between CCS and Allstate related to Allstate being updated as to the progress of the subrogation action from CCS, nor did Allstate have any information as to the decision to dismiss the subrogation action in November 2011 until it was told that the action was dismissed.

(Doc. 39, Daveldek Decl., p. 19, ¶ 5.)  Ms. Daveldek further declares that in November 2011, she "received an e-mail from CCS stating that a judgment that Allstate obtained in [the underlying] case had been vacated at the Garcias' request."  (Doc. 39, Daveldek Decl., p. 19, ¶ 4.)  Ms. Daveldek was informed by CCS that "the attorney assigned to this subrogation action would need to re-file suit, serve the Garcias again, and again seek a judgment, and that Allstate would need to pay the costs associated with filing suit a second time."  (Doc. 39, Daveldek Decl., p. 19, ¶ 4.)

Ms. Daveldek agreed that it would be acceptable for Allstate to incur the filing fee and court costs in re-filing the suit based on the amount of damages for the subrogation claim; Ms. Daveldek further declares that "[a]t the time that [she] made the recommendation, [she] did not have any further information about this subrogation lawsuit against Mr. and Mrs. Garcia."  (Doc. 39, Daveldek Decl., p. 19, ¶ 4.)

Ms. Daveldek sets forth that CCS' attorney, Gary Rosenberg, "did not report to Allstate at all during the pendency of the subrogation action against Mr. and Mrs. Garcia or after the dismissal of that lawsuit, nor was he expected to do so.  This is because under the CCS contract, CCS had authority to hire attorneys to prosecute the subrogation action, and the attorney hired was not required to report to Allstate."   (Doc. 39, Daveldek Decl., p. 19, ¶ 5.)

Allstate contends that since Plaintiffs named Allstate as the Defendant in this action, Plaintiffs must show Allstate's state of mind in pursuing the subrogation claim.  (Doc. 39, 11:16-15:13.)  However, Allstate asserts that it contractually ceded control of its subrogation claim to CCS and CCS' counsel, who are not named in the instant suit, and CCS and CCS' counsel were responsible for filing and pursuing the underlying suit.  As such, Allstate contends that Plaintiffs cannot show that Allstate had the requisite state of mind to support either the probable cause or malice prongs of Plaintiffs' malicious prosecution claim, since CCS and CCS' counsel controlled the actions regarding the underlying suit, not Allstate.  (Doc. 39, 12:14-19.)

Allstate's contentions ignore the fact that Allstate, not CCS, was the plaintiff in the complaint filed in the prior lawsuit and that attorney Gary A. Rosenberg represented that he was the attorney for the named plaintiff in that case.  (*See* Doc. 35, Exh. E.)  CCS is not mentioned anywhere in the underlying lawsuit.  (*See* Doc. 365, Exh. E.)  Additionally, the Garcias' FAC contains the Declaration in Lieu of Testimony by Lorey K. Allen submitted in the prior lawsuit.  (Doc. 35, Exh. Q.)  Ms. Allen declares, under penalty of perjury, that she is a "litigation representative of Allstate Insurance Company, Plaintiff herein," and that she "personally reviewed the Complaint filed" in the prior lawsuit and "verif[ied] the same and hereby adopt said verified Complaint."  (Doc. 35, Exh. Q, pp. 118-19, ¶¶ 1, 3.)

23

Allstate relies on *Jacques Interiors v. Petrak*, 188 Cal. App. 3d 1363, 1370 (1987) for the contention that, in a malicious prosecution suit, the court must determine the defendant's state of mind and cannot base the claim upon the state of mind of additional entities not named in the suit. *Id*. at 1370.  Additionally, Allstate relies on *Citi-Wide Preferred Couriers, Inc.*, 114 Cal. App. 4th at 912 for the contention that the court's analysis must focus on "the plaintiff in the underlying action" and not on entities who were "not parties."  *Id.* at 912.  Allstate's contentions appear to rely on the evidence submitted that CCS, not Allstate, was responsible for the prior lawsuit and that Allstate was not involved.  Allstate's reliance on these cases appears to be misplaced, however, since Allstate was a *named party* in the prior lawsuit.

Although Allstate now contends that it was not responsible for bringing the prior lawsuit, the actual complaint and Ms. Allen's declaration in the prior case contradict that contention.  As such, when there is a factual dispute regarding a malicious prosecution claim, the malicious prosecution plaintiff has a right to have a trier of fact "resolve the threshold question of . . . factual knowledge or belief."  *Citi-Wide Preferred Couriers, Inc.*, 114 Cal. App. 4th at 912.  As such, Allstate's submitted evidence does not overcome Plaintiffs' claim for malicious prosecution.

Accordingly, for the reasons set forth above, it is RECOMMENDED that Allstate's anti-SLAPP motion be DENIED.

## C.    Allstate's Request for Attorney's Fees and Costs Should be Denied

Allstate requests attorney's fees in the amount of $7,447.50, which includes $3,900.00 for preparing the initial anti-SLAPP motion, as well as an additional $3,547.50 for preparing the instant motion.  (Doc. 39, 16:1-8.)  Allstate's request is based upon Section 425.16(c)(1), which provides that "a prevailing defendant on a special motion to strike shall be entitled to recover . . . attorney's fees and costs."  "[D]efendants sued in federal courts can bring anti-SLAPP motions to strike state law claims and are entitled to attorneys' fees and costs when they prevail."  *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

1    Here, however, Allstate is not the prevailing party, as the Court recommends that Allstate's

2    anti-SLAPP motion be denied.  As such, it is likewise RECOMMENDED that Allstate's request

3    for attorney's fees for the instant motion be DENIED.[2]

### IV.   CONCLUSION AND RECOMMENDATION

5    Based on consideration of the declarations, pleadings, and exhibits to the present motion,

6    the Court RECOMMENDS that:

7    1.    Allstate's anti-SLAPP motion be DENIED;

8    2.    Allstate's request for an award of attorney's fees be DENIED; and

9    3.    Allstate file an answer or other responsive pleading within twenty-one (21) days of

10    the final order by the district judge on this motion.

11    The Clerk's Office is DIRECTED to serve Plaintiffs with a copy of these findings and

12    recommendations via U.S. mail at the following address:

13    Efrain Garcia and Ofelia Garcia
      1095 Adams Avenue
14    Orange Cove, CA 93646

15    These findings and recommendations are submitted to the district judge assigned to this

16    action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty-one

17    (21) days of service of this recommendation, any party may file written objections to these

18    findings and recommendations with the Court and serve a copy on all parties.  Such a document

19    should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   If

20    objections are filed, any responses to the objections shall be filed within fourteen (14) days of the

21    service of the objections. Local Rule 304(d).  The district judge will review the magistrate judge's

22    findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that

23    failure to file objections within the specified time may waive the right to appeal the district judge's

24    order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

25    IT IS SO ORDERED.

26    Dated:   __January 6, 2014__                     _____/s/ Sheila K. Oberto_____
                                                        UNITED STATES MAGISTRATE JUDGE

27

---

28   [2] Defendant's request for attorney's fees based on the prior anti-SLAPP motion has been denied for reasons previously set forth by the Court.  (*See* Docs. 16, 18.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28