**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **EFRAIN GARCIA and OFELIA GARCIA,**<br><br>    **Plaintiffs**<br><br>    **v.**<br><br>**ALLSTATE INSURANCE,**<br><br>    **Defendant** | **CASE NO. 1:12-CV-609 AWI SKO**<br><br>**ORDER ON DEFENDANT'S RULE 52(c) MOTION AND FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>(Doc. No. 73) |

On January 27, 2015, a bench trial began in this matter.  Plaintiffs presented all of their evidence that day, and Defendant moved for a directed verdict under Rule 52(c).  The Court set a briefing schedule on Defendant's Rule 52 motion.  All briefing has now been received.  The only cause of action at issue is for malicious prosecution under California law.  For the reasons that follow, Defendant's motion will be granted and this case will close.

*Defendant's Argument*

Defendant argues that Plaintiffs cannot establish the necessary elements of a malicious prosecution claim.  First, Defendant argues that there is no vicarious liability for malicious prosecution claims, and there is no evidence that Defendant was involved in or was aware of the events in the subrogation case.  Second, the underlying state court case did not have a favorable termination.  Instead of a termination on the merits, the case was dismissed because Defendant could not send a representative to the settlement conference and Defendant wished to avoid sanctions.  Third, based on the police report in this case, Defendant had probable cause to bring the state court case.  Finally, there is no evidence that Defendant acted with malice.

1    *Plaintiff's Opposition*

2         Plaintiffs argue that judgment in favor of Defendant is improper.  The evidence shows that

3    Defendant knew about the lawsuit and endorsed it.  Defendant was the only named plaintiff in the

4    underlying state court proceeding.  There was a favorable termination because Defendant

5    unilaterally dismissed its case.  In the Findings and Recommendations ("F&R") of January 6,

6    2014, it was acknowledged that Plaintiffs met this requirement.  Thus, this element is no longer in

7    contention.  There was no probable cause because Plaintiffs informed Defendant and provided

8    documentation that they were not the owners of the car that was involved in the hit and run

9    accident.  Finally, an improper motive is apparent because Defendant was aware that Plaintiffs did

10   not own the vehicle, yet they continued to pursue a lawsuit against them.

11        *Legal Framework – Federal Rule of Civil Procedure 52(c)*

12        "If a party has been fully heard on an issue during a nonjury trial and the court finds

13   against the party on that issue, the court may enter judgment against the party on a claim or

14   defense that, under the controlling law, can be maintained or defeated only with a favorable

15   finding on that issue. . . . A judgment on partial findings must be supported by findings of fact and

16   conclusions of law as required by Rule 52(a)."

17        *Legal Standard – Malicious Prosecution*

18        A malicious prosecution plaintiff must show that a prior civil action:  (1) was commenced

19   by or at the direction of the defendant; (2) was pursued to a legal termination in the plaintiff's

20   favor; (3) was brought without probable cause; and (4) was initiated with malice.  See Casa

21   Herrera, Inc. v. Beydoun, 32 Cal.4th 336, 341 (2004); Jay v. Mahaffey, 218 Cal.App.4th 1522,

22   1539 (2013); Drummond v. Desmarias, 176 Cal.App.4th 439, 449 (2009).  "[A] principal who

23   personally engages in no misconduct may be vicariously liable for an act of malicious prosecution

24   committed by an agent within the course and scope of the agency. . . .  Likewise, a corporation

25   may be liable for an act of malicious prosecution committed within the scope of its agent's

26   authority to act for and on behalf of the corporation."  Downey Venture v. LMI Ins. Co., 66

27   Cal.App.4th 478, 513 (1998).

28        To determine "whether there was a favorable termination," courts "look at the judgment as

2

1  a whole in the prior action . . . ." <u>Casa Herrera</u>, 32 Cal.4th at 341; <u>Jay</u>, 218 Cal.App.4th at 1539.

2  "[I]n order for the termination of a lawsuit to be considered favorable to the malicious prosecution

3  plaintiff, the termination must reflect the merits of the action and the plaintiff's innocence of the

4  misconduct alleged in the lawsuit." <u>Casa Herrera</u>, 32 Cal.4th at 341-42; <u>Jay</u>, 218 Cal.App.4th at

5  1539.  "If the termination does not relate to the merits—reflecting on neither innocence of nor

6  responsibility for the alleged misconduct—the termination is not favorable in the sense it would

7  support a subsequent action for malicious prosecution.  Thus, a 'technical or procedural

8  [termination] as distinguished from a substantive termination' is not favorable for purposes of a

9  malicious prosecution claim." <u>Casa Herrera</u>, 32 Cal.4th at 342.  "Should a conflict arise as to the

10  circumstances of the termination, the determination of the reasons underlying the dismissal is a

11  question of fact." <u>Oviedo v. Windsor Twelve Properties, LLC</u>, 212 Cal.App.4th 97, 113 (2012);

12  <u>Sycamore Ridge Apartments LLC v. Naumann</u>, 157 Cal. App. 4th 1385, 1399 (2007).  "A

13  voluntary dismissal is presumed to be a favorable termination on the merits." <u>Jay</u>, 218

14  Cal.App.4th at 1540; <u>Sycamore Ridge</u>, 157 Cal.App.4th at 1400.

15      *Findings of Fact*

16      On June 11, 2002, Plaintiffs sold a 1987 Ford Aerostar to Jose Luis Adame.  <u>See</u> Plaintiffs'

17  Exhibits 1, 2.

18      On January 4, 2003, an accident occurred involving the 1987 Ford and a 1998 Honda

19  Civic.  <u>See</u> Defendant's Ex. 101.

20      The driver of the Ford fled the scene on foot.  <u>See id.</u>

21      The driver of the Honda was insured by Defendant.  <u>See</u> Defendant's Ex. 104.

22      The police report noted that Plaintiffs were the registered owners of the Ford, but that

23  Plaintiffs stated that they had earlier sold the car to Jose Louis and that they had heard Jose Luis

24  had recently sold the Ford to another individual.  <u>See</u> Defendant's Ex. 101.  Plaintiffs could not

25  remember Jose Luis's last name and did not know the name of the individual to whom Jose Luis

26  sold the Ford.  <u>See id.</u>

27      Defendant turned the claim over to CCS, a company that handles subrogation claims for

28  Defendant.  <u>See</u> Defendant's Ex. 108.

1    CCS was responsible for pursuing subrogation claims referred to it by Defendant, but was
2    not obligated to report all progress in the suit to Defendant.  <u>See</u> Plaintiff's Ex. 7.

3    CCS retained an attorney, Gary Rosenberg ("Rosenberg"), in October 2003, and
4    Rosenberg unsuccessfully attempted to contact Plaintiffs.  <u>See</u> Defendant's Ex. 109.

5    In October 2004, CCS initiated a lawsuit in the Tulare County Superior Court ("the Tulare
6    Action") against the Plaintiffs on behalf of Defendant.  <u>See</u> Defendant's Ex. 114.

7    Defendant reviewed the complaint in the Tulare Action and approved it.  <u>See</u> Plaintiffs'
8    Ex. 6.

9    Defendant was the only named plaintiff in the Tulare Action.  <u>See</u> Defendant's Ex. 114.

10   In January 2005, Plaintiffs provided Rosenberg with copies of two DMV forms.  <u>See</u>
11   Defendant's Exs. 122, 123, 125.

12   The DMV forms indicate that Plaintiffs had transferred ownership of the Ford months
13   before the accident.  <u>See</u> Defendant's Exs. 122, 123; Plaintiff's Exs. 1, 2.

14   Rosenberg responded that he wanted certified documents to confirm the transfer.  <u>See</u>
15   Defendant's Ex. 125.

16   There is no indication that Rosenberg or Defendant attempted to confirm Plaintiffs'
17   representations with the DMV.

18   On October 20, 2011, a mandatory settlement conference was scheduled in the Tulare
19   Action for November 15, 2011.  <u>See</u> Defendant's Ex. 175.

20   On November 1, 2011, Rosenberg sent an e-mail to Jessica Allen ("Allen"), the Legal
21   Representative for CCS.  <u>See</u> Defendant's Ex. 176.  In part, the e-mail read:  "Please be advised
22   that the court has just set this matter for a Mandatory Settlement Conference on November 15,
23   2011 at 8:30 a.m. . . . .  I would appreciate it if you would notify me as soon as possible who will
24   be in attendance at the Mandatory Settlement Conference on behalf of the client, so that
25   appropriate arrangements may be made in advance of the appearances to meet and prepare the
26   same." <u>Id.</u>

27   On November 2, 2011, Allen responded in pertinent part, "I will put the request in but
28   would someone still need to appear if I can get you full settlement authority?"  <u>Id.</u>

On November 2, 2011, Rosenberg sent a responding e-mail.  See id.  The e-mail read: "With full authority (including even dismissal) this appearance would ultimately probably not be necessary."  Id.

On November 7, 2011, Allen sent Rosenberg an e-mail.  See Defendant's Ex. 177.  The e-mail read in part:  ". . . we are providing you with full settlement authority on this matter rather than having someone have to appear.  That also provides you authority to dismiss the matter if needed."  Id.

On November 11, 2011, Allen sent Rosenberg an e-mail that wished to confirm that Rosenberg had received the November 7 e-mail that granted him full authority because "we cannot provide a witness."  Id.

On November 11, 2011, Rosenberg sent a responding e-mail to Allen.  See id.  The e-mail read: "Yes – thank you.  It looks like this will need to be dismissed.  I'll send you a confirming letter."  Id.

On November 14, 2011, Allen sent Rosenberg an e-mail.  See id.  The e-mail read, "Can you please just send an explanation of the dismissal when you send the paperwork?"  Id.

On November 14, 2011, Rosenberg sent Allen a responding e-mail.  See id.  The e-mail read:  "Since the California Rules of Court and the local rules REQUIRE personal attendance at this conference, and I have been advised by the court that in this case there would be sanctions for failure to appear, in order to prevent sanction to the client, pursuant to your instructions, the matter is being dismissed."  Id. (emphasis in original).

On November 14, 2011, Allen sent Rosenberg a responding e-mail.  See id.  The e-mail read:  "Can you please advise when the last attempt was made to try to settle with the defendant, I need that to forward to the client."  Id.

On November 14, 2011, Rosenberg sent Allen a responding e-mail.  See id.  The e-mail read in part:  "Right after the judgment was set aside. . . .  We just received confirmation from the court that the conference is now off calendar due to the dismissal being filed by us."  Id.

On November 14, 2011, Allen sent Rosenberg a responding e-mail.  See id.  The e-mail read: "Ok thank you!  I will wait to see if you are requesting any additional costs or if any will be

1  returned then I will close my file down." <u>Id.</u>

2    On November 14, 2011, Rosenberg filed a dismissal of the Tulare Action without

3  prejudice.  <u>See</u> Defendant's Ex. 178.

4    Defendant dismissed the Tulare Action because it could not send a representative to

5  personally appear at the settlement conference and Defendant wished to avoid sanctions.  <u>See</u>

6  Defendants' Exs. 176, 177.

7    Plaintiffs filed this lawsuit in 2012.  <u>See</u> Doc. No. 1.

8    An F&R dated January 6, 2014, recommended denying an anti-SLAPP motion filed by

9  Defendant.  <u>See</u> Doc. No. 44.  In part, the F&R found that Plaintiffs had made sufficient

10  allegations in their complaint that the Tulare Action had terminated in their favor.  <u>See id.</u> at

11  13:20-14:5. The F&R noted that Defendant's anti-SLAPP motion did not challenge the favorable

12  termination element of malicious prosecution.  <u>See id.</u>

13    The F&R was adopted in full by the Court on February 5, 2014.  <u>See</u> Doc. No. 45.

14    <u>*Conclusions of Law*</u>

15    In connection with an anti-SLAPP motion, "If the Court determines that the plaintiff has

16  established a probability that he or she will prevail on the claim, neither that determination nor the

17  fact of that determination shall be admissible in evidence at any later stage of the case, or in any

18  subsequent action, and no burden of proof or degree of proof otherwise applicable shall be

19  affected by that determination in any later stage of the case or in any subsequent proceeding."

20  Cal. Code Civ. Pro. § 425.16(b)(3); <u>Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.</u>, 742 F.3d

21  414, 428 (9th Cir. 2014).

22    "Denial of an anti-SLAPP motion resolves a question separate from the merits in that it

23  merely finds that such merits may exist, without evaluating whether the plaintiff's claim will

24  succeed." <u>Batzel v. Smith</u>, 333 F.3d 1018, 1025 (9th Cir. 2003) (citing § 425.16(b)(3)).

25    The Court's adoption of the F&R, and in particular the portion of the F&R that found

26  Plaintiffs had sufficiently alleged a favorable termination, did not establish the favorable

27  termination element of malicious prosecution for all purposes, nor did it take that element out of

28  contention.  <u>See</u> Cal. Code Civ. Pro. § 425.16(b)(3); <u>Greater L.A. Agency</u>, 742 F.3d at 428;

1  Batzel, 333 F.3d at 1025.

2         Plaintiffs have the burden of establishing the favorable termination element of malicious

3  prosecution, see Casa Herrera, 32 Cal.4th at 341; Jay, 218 Cal.App.4th at 1539, irrespective of the

4  F&R.  See Cal. Code Civ. Pro. § 425.16(b)(3); Greater L.A. Agency, 742 F.3d at 428; Batzel, 333

5  F.3d at 1025.

6         A voluntarily dismissal of a case because a representative cannot be found to attend a

7  mandatory settlement conference, and wishing to avoid sanctions for the absence of a

8  representative, does not reflect on the merits of an underlying action or on the innocence of a

9  plaintiff for the wrongful conduct at issue.

10         Because Defendant's voluntary dismissal of the Tulare Action was done to avoid sanctions

11  for not having a representative present, the dismissal was not an acknowledgment of the Plaintiffs'

12  innocence for the 2003 car accident, nor did it reflect on the merits of the Tulare Action.

13         Defendant has sufficiently rebutted the presumption that the voluntary dismissal was a

14  "favorable termination;" there was not a "favorable termination."  See Defendant's Exs. 176, 177;

15  cf. Jay, 218 Cal.App.4t h at 1540 (noting that defendant in that case did not present evidence to

16  rebut the presumption of a favorable termination following a voluntary dismissal).

17         Because a "favorable termination" is a required element for a claim of malicious

18  prosecution, judgment in favor of Defendant is appropriate.

19

20                       **ORDER**

21         Accordingly, IT IS HEREBY ORDERED that judgment in favor of Defendant pursuant to

22  Federal Rule of Civil Procedure 52(c) is GRANTED due to the failure of Plaintiff to establish the

23  necessary element of "favorable termination."

24

25  IT IS SO ORDERED.

26  Dated:   April 7, 2015

27                       SENIOR  DISTRICT  JUDGE

28